## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROUND ROCK RESEARCH, LLC )<br><br>　　　Plaintiff,　　　　　　　　　　　)<br><br>　　v.　　　　　　　　　　　　　　　)<br><br>ASUSTEK COMPUTER INC. and　　)<br>ASUS COMPUTER　　　　　　　　)<br>　　　INTERNATIONAL, INC.　　　)<br><br>　　　Defendants.　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　) | Civil Action No. 11-978-RGA<br><br>**JURY TRIAL DEMANDED** |

## ROUND ROCK RESEARCH'S OPPOSITION TO ASUSTEK COMPUTER INC. AND ASUS COMPUTER INTERNATIONAL, INC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND MOTION TO TRANSFER

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Paul A. Bondor (admitted pro hac vice)
Jonas R. McDavit (admitted pro hac vice)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
(212) 351-3401
pbondor@desmaraisllp.com
jmcdavit@desmaraisllp.com

Counsel for Plaintiff

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1

II.  BACKGROUND ............................................................................................................1

III.  DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION SHOULD BE DENIED. ....................................................................3

    A.  Legal Standards. .................................................................................................3

    B.  This Court Has Personal Jurisdiction Over Defendants ASUSTeK And ACI. ........4

        1.  Personal Jurisdiction Exists Over Defendants Under The Delaware Long
Arm Statute (10 Del. C. § 3104). ..........................................................5

            a.  Defendants Are Subject To Specific Jurisdiction In Delaware. ......5

            b.  Defendants Are Also Subject To "Dual" Personal Jurisdiction In
Delaware. ........................................................................................9

        2.  Personal Jurisdiction Can Be Exercised Without Offending The Due
Process Clause. .....................................................................................11

    C.  Round Rock Has Made A Jurisdictional Showing *At Least* Sufficient To Warrant
Jurisdictional Discovery. ..................................................................................13

IV.  DELAWARE IS THE PROPER VENUE FOR THIS ACTION ......................................13

V.  DEFENDANTS MOTION TO TRANSFER THIS ACTION TO THE NORTHERN
DISTRICT OF CALIFORNIA SHOULD BE DENIED. ...............................................14

    A.  Legal Standards ................................................................................................14

    B.  Argument .........................................................................................................15

        1.  Defendants Must Demonstrate That The *Jumara* Factors Strongly Support
Transferring This Action. .....................................................................15

        2.  Round Rock's Choice Of Forum Is Given Paramount Consideration
Because It Chose To Litigate On Its Home Turf. .....................................16

        3.  The Remaining Private Factors Are Neutral Or Weigh Against Transfer. 17

        4.  The Judicial Economy Gained By Maintaining This Action In Delaware
Weighs Strongly Against Transfer. ........................................................19

        5.  The Remaining Public Interest Factors Weigh Against Transfer. ..............20

VI.  CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*1st Source Bank v. Merritt*, 759 F. Supp. 2d 505 (D. Del. 2011) ................................................16

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192 (D. Del. 1998) ............................................17

*Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354 (D. Del. 2001)...19

*Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987) ...................11, 12

*Autodesk Can. Co. v. Assimilate, Inc.*, No. 08-CV-587-SLR-LPS, 2009 WL 3151026 (D. Del.

    Sep. 29, 2009) ..........................................................................................................................20

*Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448 (D. Del. 2009)...........................................14

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).......................6, 9

*Boone v. Oy Partek Ab*, 724 A.2d 1150 (Del. Super. 1997).........................................................9, 10

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706 (1972) ...................................14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................11

*Cashedge, Inc. v. Yodlee, Inc.*, No. 06-CV-170-JJF, 2006 WL 2038504 (D. Del. July 19, 2006)19

*Cephalon, Inc. v. Watson Pharma., Inc.*, 629 F. Supp. 2d 338 (D. Del. 2009) ..............................7

*CNH Am. LLC v. Kinzenbaw*, No. 08-CV-945-GMS, 2009 WL 3737653 (D. Del. Nov. 9, 2009)

    ..................................................................................................................................................16

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir.

    2005) ...........................................................................................................................................4

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994)....................................13

*Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-CV-971-LPS-CJB, 2011 WL 6004079 (D. Del.

    Nov. 4, 2011) ..........................................................................................................4, 9, 10, 13

*Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374 (D. Del. 2009) ..................................................4

*Gielata v. Heckmann*, No. 10-378-LPS-MPT, 2010 WL 3940815 (D. Del. 2010)......................17

*Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180 (Del. Ch. 2010.)............................................5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)...................................11

*Human Genome Sci., Inc. v. Genentech, Inc.,* Nos. 11-CV-082-LPS, 11-CV-156-LPS, 11-CV-328-LPS, 2011 WL 2911797 (D. Del. Jul. 18, 2011) .................................................................. 19

*In re Link-a-Media,* 662 F.3d 1221 (Fed. Cir. 2011) ...................................................................... 18

*Intel Corp. v. Broadcom Corp.,* 167 F. Supp. 2d 692 (D. Del. 2001) ............................................ 3

*Intellectual Ventures I LLC v. Checkpoint Software Techs., Ltd.,* 797 F. Supp. 2d 472 (D. Del. 2011) ................................................................................................................... 14, 15, 20

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945) ..................................................................... 11

*J. McIntyre Mach., Ltd. v. NiCastro,* 131 S. Ct. 2780 (2011) ...................................................... 11

*Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995) ......................................................... 15

*L'Athene, Inc. v. Earthspring LLC,* 570 F. Supp. 2d 588 (D. Del. 2008) ...............................passim

*LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764 (Del. 1986) ................................................ 10

*LG Elecs., Inc. v. ASUSTeK Comp. Inc.,* 126 F. Supp. 2d 414 (E.D. Va. 2000) .......................... 12

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369 (Fed. Cir. 2005) ............................................................................................................................... 6

*Monsanto Co. v. Syngenta Seeds Inc.,* 443, F. Supp. 2d 636 (D. Del. 2006) ................................ 4

*Nihon Tsushin Kabushiki Kaisha v. Davidson,* 595 F. Supp. 2d 363 (D. Del. 2009) ................... 18

*Personalized User Model LLP v. Google, Inc.,* No. 09-CV-525-JJF, 2009 WL 3460767 (D. Del. Oct 27, 2009) ................................................................................................................ 17

*Phillips Elecs. N. Am. Corp. v. Contec Corp.,* No. 02-CV-123-KAJ, 2004 WL 503602 (D. Del. Mar. 11, 2004) ................................................................................................................ 10

*Power Integrations, Inc. v. BCD Semiconductor Corp.,* 547 F. Supp. 2d 365 (D. Del. 2008) ..........................................................................................................................................passim

*Praxair, Inc. v. ATML Inc.,* No. 03-CV-1158, 2004 WL 883395 (D. Del. Apr. 20, 2004) ........... 16

*Quinetiq Limited v. Oclaro,* No. 09-CV-372-JAP, 2009 WL 5173705 (D. Del. Dec. 18, 2009) .. 17

*Round Rock Research, LLC v. Acer Inc.,* No. 10-CV-977-RGA ................................................... 19

*Round Rock Research, LLC v. Dell Inc.,* No. 10-CV-976-RGA .................................................... 19

*Round Rock Research, LLC v. Lenovo Group Ltd.,* No. 10-CV-1011-RGA ................................. 19

*Simms v. Thomson Reuters Tax and Accounting, Inc.*, No. 10-CV-904-LPS, 2011 WL 4501225

 (D. Del. Sep. 28, 2011) ......................................................................................17, 18

*Tower Mfg. Corp. v. Shanghai Ele Mfg. Corp.*, 533 F. Supp. 2d 255 (D. R.I. 2008) ....................9

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ...........................................4, 12

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635 (D. Del. 2008) ....................4, 6

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294 (D. Del. 2002)........................14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).........................................4, 11

**Statutes**

10 Del. C. § 3104........................................................................................................4, 5

28 U.S.C. § 1391 ............................................................................................................14

28 U.S.C. § 1400 .......................................................................................................13, 15

## I.      INTRODUCTION

Defendants ASUSTeK Computer Inc. ("ASUSTeK") and ASUS Computer International, Inc. ("ACI") introduce hundreds of thousands of "ASUS" brand products into the United States each year, including the infringing netbooks, laptops, notebook computers, desktop computers, monitors, and motherboards at issue in this case. Those products are offered for sale and sold in Delaware by defendants directly and through their agents, and the direct and indirect infringement alleged in the complaint occurs here. Because defendants (1) infringe the patents in suit both directly and indirectly in Delaware, (2) cause harm to Delaware plaintiff Round Rock Research ("Round Rock") through their infringement, (3) have ongoing contacts with Delaware, and (4) introduce infringing products into the United States market knowing that purchasers and users of those infringing products are located in Delaware, the Court should reject defendants' request to dismiss the case for lack of personal jurisdiction and improper venue.

Nor have defendants provided any compelling justification to transfer this action to the Northern District of California under 28 U.S.C. § 1404(a). Contrary to defendants' contentions, consideration of the *Jumara* transfer factors favor keeping this action in Delaware, not least because of the judicial economy achieved by maintaining this case in the same jurisdiction as the three other related cases to this action—cases that involve the same patents, same inventors, and overlapping issues of fact and law. Because the balance of the 1404(a) convenience factors weigh strongly against transfer, defendants' motion to transfer should also be denied.

## II.     BACKGROUND

Plaintiff Round Rock Research, LLC ("Round Rock") filed this patent infringement action against the defendants because they make, use, sell, offer for sale, and import infringing computer products in the United States. ASUSTeK is a multi-national technology and consumer electronics corporation; in fact, it is one of the largest such companies in the world. (Ex.1.)[1] ASUSTeK is also the world's largest manufacturer of computer motherboards, (Ex. 2)—which are not only necessary components in all computers, but also infringe multiple patents in suit.

---

[1] Unless otherwise noted, all exhibits cited are exhibits to the declaration of Jonas R. McDavit.

ASUSTeK's 2010 annual report stated that "ASUS is the world number one [computer] brand in Europe, Asia, and America" and that "ASUS is a dominant brand name in [the] market." (Ex. 3 at 60.) It also reported ASUSTeK's "internal[*sic*] operating income" in "America/Canada" of approximately NT$2 billion in 2009 and NT$ 427 million in 2010. (Ex. 3 at 62.) ASUSTeK seeks to achieve a 50% market share in supplying computer motherboards and a "Top-Three" personal computer brand by 2014. (Ex. 3 at 62; Ex. 4.)

Over the past several years, ASUSTeK has made a targeted effort to serve the United States consumer electronics market—a "very important market" for the company. (Ex. 2.) Indeed, as recently as October 2011, ASUSTeK's personal computer (PC) sales were 6.2 percent of the US market—5th among such manufacturers. (Ex. 5) ASUSTeK is actively trying to increase its market share in the United States with a goal of entering the top three in US PC sales by 2014. (Ex. 4.) Further, ASUSTeK has demonstrated its commitment to the United States market by launching flagship computer products here. (Exs. 6; 7.)

In an effort to enter various international markets, ASUSTeK has established 100-percent-owned and operated subsidiaries around the world. (*See* Ex. 3 at 4-5, 66-67, 131-142, 193.) Through its subsidiaries ASUSTeK achieves vertical integration of its supply chain and facilitates marketing, service, and support of ASUS-brand products within various markets. (*Id.* at 60.) ASUSTeK controls the activities its subsidiaries to manage its resources and control company costs. (*Id.* at 67.) ASUSTeK's subsidiaries' income and loss are integrated with the parent company in its audited financial statements. (*Id.* at 87). Further, subsidiary employees receive stock dividends and stock bonuses of the parent company. (*Id.* at 51, 107.)

Defendant ACI is ASUSTeK's 100% owned American subsidiary. (*Id.*, at 131; Ex. 8.) ACI is also ASUSTeK's United States "sales and repair service center" and is ASUSTeK's central point of contact for ASUSTeK customers in the United States. (Ex. 3 at 131; Ex. 9; Farnan Decl. ¶ 1.) ACI provides 24-hour technical support via email, telephone, and web chat to United States consumers. (Ex. 9.) ACI also operates the ASUS "eStore" out of its Fremont, California location, which is accessible in Delaware. (Ex. 10; Farnan Decl. ¶ 1.) The "eStore"

2

advertises, markets, sells, and ships ASUS-branded products to "thousands of customers in North America," including customers in Delaware. (Ex. 10; Farnan Decl. ¶ 1.) ACI also promotes and lists its authorized distributors that market, advertise, and sell ASUS products, including retailers with physical locations in Delaware. (Exs. 11-13, 15; Farnan Decl. ¶ 5.) ACI's authorized dealers also include many other retailers that sell and ship products nationwide, including to Delaware addresses. (Exs. 11, 16.) ACI also targets commercial customers and provides ASUS marketing materials to them. (Ex. 17.) ACI operates and manages a business partner programs that ASUS reseller partners "can use to sell more products at higher margins." (Exs. 18-19.) Moreover, ACI provides central access to ASUS product technical support, user manuals, sales literature, and marketing materials. (Ex. 20.) ACI and ASUSTeK also redirect Delaware consumers seeking warranty and support information, as well as information about the ASUS brand, companies, and products, to ASUSTeK's website.

Accordingly, ASUSTeK and ACI are national players in the United States consumer electronics and technology market. They sell infringing ASUS-branded products directly to Delaware consumers through its "eStore," through retailers with nationwide shipping, and through physical locations in Delaware. In addition, they provide direct support to Delaware customers and users, thereby inducing infringement of the patents-in-suit here and throughout the country. Consistent with Delaware law and due process, they are subject to jurisdiction here.

## III.   DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION SHOULD BE DENIED.

### A.   Legal Standards.

In order to determine the existence of personal jurisdiction, the Court must consider whether a defendant's actions come within any of the provisions of Delaware's Long-Arm statute (10 Del. C. § 3104), and whether exercising jurisdiction in Delaware comports with the Due Process Clause of the Constitution. *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008) (citing *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001)). The Delaware Supreme Court liberally construes § 3104 in order "to

provide residents a means of redress against those not subject to personal service within the State." *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 383 (D. Del. 2009) (citing *Monsanto Co. v. Syngenta Seeds Inc.*, 443 F. Supp. 2d 636, 642 (D. Del. 2006)). Accordingly, Delaware's Long-Arm Statute is interpreted to the fullest extent allowed by the Due Process clause. *See Power Integrations*, 547 F.Supp.2d at 370 ("[T]he only limit placed on [Delaware's long-arm statute] is that it remain within the constraints of the Due Process Clause.")

Constitutional due process is satisfied if "sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 641 (D. Del. 2008)  The purpose of this requirement is to ensure that "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In addition to general jurisdiction over a defendant corporation, Delaware Courts will exercise specific personal jurisdiction where the cause of action arises out of or relates to the defendant's contacts with the forum. *Power Integrations*, 547 F. Supp. 2d at 370; *see* 10 Del. C. § 3104(c)(1)-(3). Additionally, "dual jurisdiction" exists where the defendant intends to serve the Delaware market and the cause of action arises from the entry of the defendant's product into the market. *Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-CV-971-LPS-CJB, 2011 WL 6004079, at *16 (D. Del. Nov. 4, 2011); *Power Integrations*, 547 F. Supp. 2d at 371-72.[2]

### B.   This Court Has Personal Jurisdiction Over Defendants ASUSTeK And ACI.

ASUSTeK and ACI have substantial, consistent, and purposeful contacts with Delaware. They direct their activities at Delaware consumers and retailers through, at least, marketing

---

[2] To the extent that jurisdiction is not apparent at the pleading stage, Courts grant jurisdictional discovery unless the plaintiff's jurisdictional claim is clearly frivolous. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003). If a plaintiff alleges the possible existence of requisite contacts between the defendant and the forum state, the court should order jurisdictional discovery. *Eastman Chem. Co.*, 2011 WL 6004079, at *2; *see Power Integrations*, 547 F. Supp. 2d at 369 (citing *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005)).

ASUS products to US consumers, offering and selling infringing products through its direct-sale website, distributing ASUS-branded products to US resellers, and providing service and support to customers and end users.   Those activities confer this Court personal jurisdiction over defendants consistent both with Delaware law and the Constitution.[3]

### 1.   Personal Jurisdiction Exists Over Defendants Under The Delaware Long Arm Statute (10 Del. C. § 3104).

Defendants are subject to personal jurisdiction in Delaware pursuant to the Delaware long arm statute because their presence and contacts with Delaware are sufficient to confer specific and "dual" personal jurisdiction.[4]   Defendants' conduct and contacts in Delaware have been continuous, purposeful, and relate directly to Round Rock's patent infringement claims, not least because defendants: (1) operate a website that offers for sale the infringing products and ships directly to Delaware; (2) advertise their products in Delaware stores and newspapers; (3) offer for sale infringing products in Delaware through its authorized resellers' online and physical Delaware locations; (4) provide service and support for the infringing products directly to consumers in Delaware (particularly relevant to Round Rock's indirect infringement claims); and (5) generally intend to serve the Delaware market as part of their common goals to increase their United States market share.   As such, defendants' motion to dismiss should be denied.

### a.   Defendants Are Subject To Specific Jurisdiction In Delaware.

Defendants are subject to specific jurisdiction in Delaware because the causes of action—direct and indirect infringement of the Patents-in-Suit—arise out of and relate to their contacts with the forum.   *Power Integrations*, 547 F. Supp. 2d at 370; *see* 10 Del. C. § 3104(c)(1)-(3). Under Delaware law, "'[A] single transaction is sufficient to confer [specific] jurisdiction where the claim is based on that transaction.'"   *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1196 (Del. Ch. 2010.)   Specific jurisdiction is proper here under both 10 Del. C. § 3104(c)(1) or (c)(3).

---

[3] Furthermore, if the Court should conclude despite the current record that jurisdictional facts have not yet been sufficiently proven, the Court should permit jurisdictional discovery to confirm that jurisdiction.

[4] Though defendants' systematic, continuous, and purposeful contact also support general jurisdiction in Delaware, the Court need not reach that issue to deny the motion.

In the patent context, specific jurisdiction exists in Delaware when a defendant markets, advertises, or offers for sale the infringing products in Delaware, whether or not those contacts were made through contracts with third parties. *See TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 640-41 (D. Del. 2008) (footnote omitted). For example, in *TriStrata Technologies*, a defendant argued that this Court lacked personal jurisdiction because it had no physical presence in Delaware, had a minimal number and dollar amount of sales to Delaware addresses, and that its only sales were as a result of an advertising campaign conducted by a third party. *Id.* at 638. Nonetheless, the Court concluded that the defendant "purposefully directed its activities at Delaware residents" and that specific jurisdiction was proper because the defendant caused patentee's injury in Delaware where the infringing products were sold. *Id.* at 640 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570 (Fed. Cir. 1994); *see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("[T]he situs of an injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee, and that '[e]conomic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there.'").[5]

The facts similarly support jurisdiction over defendants here. ASUSTeK is the corporate parent of the entire multinational chain of ASUS companies, including ACI. (Ex. 3 at 131.) As stated in the Complaint, ASUSTeK makes, uses, sells, offers for sale, and imports infringing products into the United States. (D.I. 15.) Indeed, ASUSTeK itself manufactures and warrants products physically purchased through ASUSTeK's authorized resellers in Delaware. (Farnan Decl. ¶ 3; Ex. 6.) ASUSTeK further concedes that it directs that its products enter the United States through Defendant ACI or its other entirely owned subsidiaries. (D.I. 18, Huang Decl. at ¶ 7, 9.) Finally, as the controlling ASUS entity, ASUSTeK is jurisdictionally liable in Delaware for its subsidiaries, including ACI and any other majority-owned subsidiary. *See, e.g., Cephalon,*

---

[5] That authority refutes defendants' apparent contention that specific jurisdiction only exists at the location where the infringing products entered the United States. (D.I. 18 at 7.)

*Inc. v. Watson Pharma., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction.").   ASUSTeK controls and directs the activities of its subsidiaries, including ACI. (Ex. 3 at 4-5, 60, 66-67.)  ACI employees receive ASUSTeK stock dividends and bonuses. (*Id.* 57, 107.)  ACI's Chairman, Jonney Shih, is also the chairman of ASUSTeK.  (Ex. 3 at 16; Ex. 21.)   ASUSTeK consolidates and reports ACI's financial statements with ASUSTeK's.  (Ex. 3 at 87.)

Indeed, Delaware visitors to ACI's marketing, sales, and support website are redirected to parent ASUSTeK's web pages for information about the ASUS brand, companies, and management, and even a consumer- and investor-directed letter from ASUSTeK and ACI Chairman, Mr. Shih.  (Ex. 3 at 16; Ex. 21.)  That information, provided by ACI to Delaware consumers, confirms that ACI's company profile, corporate governance, revenues, and financial information are tightly integrated with its parent. (*See* Ex. 21.)  It also reflects that defendants intentionally associate themselves with the sale of products to consumers in Delaware and the rest of the United States.  Their interlocking web-sales and support sites create, and reinforce, seamless integration between ACI and its parent, ASUSTeK, inspiring consumer confidence in both companies and their joint ASUS-branded products, in Delaware and throughout the United States.  (*See id.*; Ex. 22 (linking to the ACI eStore); Ex. 23 (linking to the ACI eStore for US consumers).)

Second, Defendant ACI imports ASUS products in the United States and, through its eStore, resells them directly to consumers in Delaware and nationwide (D.I. 18, Yan Decl. at ¶ 9; Ex. 10; Farnan Decl. ¶ 2.)[6]  Moreover, ACI provides and is the central point of contact for instructions, manuals, and warranty information for ASUS products, including for customers and users in Delaware.  (Ex. 9.)  ACI also advertises and supplies products to US customers through

---

[6] Round Rock purchased and obtained an Eee Slate EP-121 computer in Delaware through the ASUS "eStore." (Farnan Decl. ¶ 2.)  That product infringes at least U.S. Patent Nos. 5,787,174; 6,002,613; 7,138,823; 7,285,979; and 7,389,369.  (*See* D.I. 15 ¶¶ 31, 58, 76, 85, 94; Ex. 20.)

its authorized resellers, many of whom have physical locations in Delaware. (Ex. 11; Farnan Decl. ¶ 5.) For example, ACI resellers such as Best Buy, Comp USA, Staples, and Office Depot all advertise and offer for sale ASUS infringing products in its Delaware stores and in Delaware newspapers. (Farnan Decl. ¶¶ 6, 9.) Indeed, infringing products are on those resellers' shelves and available for purchase by Delaware customers, to be used in Delaware as instructed by ACI-provided sales, service, and support materials.[7] (Farnan Decl. ¶¶ 7, 8.)

Third, although defendants' carefully worded declarations claim that they have not "directly" sold or imported three exemplary accused products in Delaware, they do not deny that (1) defendants offer infringing products for sale in Delaware; (2) defendants' customers and end users use those infringing systems here in Delaware, as designed and instructed by defendants' sales, marketing, support and service materials; and (3) they have directly imported and sold in Delaware the dozens of other accused products in the case. Indeed, defendants' declarations tacitly concede that they and their agents have offered, and are selling and supplying, those products (along with the dozens of other infringing product families) in Delaware. Given the evidence of the infringing products existence in Delaware retail stores and direct sales through defendants' "eStore," specific jurisdiction is appropriate here based on offers for sale, sales by agents, and end customer use in Delaware, even if defendants claim that they did not "directly" sell a few particular exemplary infringing models in Delaware. *See, e.g. L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 593 (D. Del. 2008) (holding that defendants web sales and shipments to Delaware sufficient to confer personal jurisdiction).

---

[7] While ACI cherry-picks certain exemplary accused products, disavowing knowledge as to whether those particular products have been directly sold in Delaware (D.I. 18 at 7), defendants are silent with regard to the many other accused categories of products in this case, including computers with Wi-Fi, Bluetooth, USB 3.0, and DDR memory. (*E.g.*, D.I. 15, ¶¶ 31, 49, 58.) Defendants make no effort to dispute that they offer for sale, sell, and ship the many other specifically identified infringing ASUS product lines in the Amended Complaint to Delaware customers, or that many end users in Delaware use those infringing ASUS products here. Defendant ACI's web site offers infringing ASUS products for sale in Delaware and provides related pre-and post-sale activity to customers and end users in Delaware.

Finally, defendants induce Delaware purchasers and end users of the infringing ASUS products to infringe the Patents-in-Suit. Defendants' national advertising and promotions run in Delaware, and their sales efforts seek to sell infringing products here in Delaware and throughout the country. Moreover, as discussed above, they actively and knowingly induce and contribute to the infringement of end users here in Delaware by providing instructions, users guides, and manuals to their products directly and through their websites. (Exs. 20, 24; Farnan Decl. ¶ 4.) Those acts of indirect infringement also support specific jurisdiction here. *See, e.g., Beverly Hills Fan*, 21 F.3d at 1563 (recognizing that direct and indirect infringement are separate torts that inflict "continuous injury" on the patentee); *Tower Mfg. Corp. v. Shanghai Ele Mfg. Corp.*, 533 F. Supp. 2d 255, 269 (D. R.I. 2008) ("[B]ecause [the patentee] has alleged not only direct infringement but also contributory and inducement of infringement for acts that have resulted in direct infringement in [the forum], the cause of action for this suit arises in [the forum]"). Because defendants' actions give rise to specific jurisdiction over this case, the Court should deny their motion to dismiss.

### b. Defendants Are Also Subject To "Dual" Personal Jurisdiction In Delaware.

Defendants introduced infringing products into the United States with the knowledge and intent that those products would serve customers in Delaware. Under well-established Delaware law, where an entity places goods into the stream of commerce intending to serve the Delaware market, and those goods subsequently enter Delaware and cause injury, "dual" personal jurisdiction exists over that entity in Delaware. *See, e.g., Eastman Chem.*, 2011 WL 6004079, at *15-*18 (explaining theory and noting that dual jurisdiction is "well-established" Delaware law); *Power Integrations,* 547 F. Supp. 2d at 371-73 (explaining constitutional and statutory basis for "dual jurisdiction" and applying it in the patent context); *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1158 (Del. Super. 1997) ("Dual jurisdiction best encompasses all of the intricacies of the stream of commerce theory, taking into account the relationship between the manufacturer and the forum and the relationship between the controversy and the forum.") The "touchstone" of dual

jurisdiction/stream of commerce is the "intent to serve the Delaware market." *Power Integrations*, 547 F. Supp. 2d at 372 (citing *Boone*, 724 A.2d at 1158). On that basis, Delaware state and Federal Courts have consistently found that national and multi-national corporations who introduce products into the Delaware market are subject to personal jurisdiction. *See Eastman Chem.*, 2011 WL 6004079, at *13 (dual jurisdiction may exist where there is evidence of an intent to serve the U.S. market with the accused products); *Power Integrations*, 547 F. Supp. 2d at 374 (dual jurisdiction exists if it is reasonably foreseeable that the defendants' accused products would make their way into the Delaware market); *Phillips Elecs. N. Am. Corp. v. Contec Corp.*, No. 02-CV-123-KAJ, 2004 WL 503602, at *4 (D. Del. Mar. 11, 2004) (established distribution channel sufficient to confer personal jurisdiction); *Boone*, 724 A.2d at 1158 (personal jurisdiction exists where defendant intended to sell its product nationally, where product entered Delaware, and product caused injury to the Plaintiff); *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986) (personal jurisdiction exists for foreign company whose product entered Delaware and provided a warranty to Delaware customers).

Defendants seek to offer and sell the infringing products in the United States market. (Ex. 3; *see* D.I. 18, Yan Decl. at ¶¶ 9-10.) As its public statements reveal, ASUSTeK aims to increase its market share throughout the United States, and undertakes those activities through, and in conjunction with, its wholly-owned United States subsidiary, ACI. Defendants contract with and supply national and Delaware retailers such as Best Buy, Staples, Office Depot, and Comp USA to offer and sell the infringing products, knowing and intending that those products are sold here; they do not instruct authorized resellers not to sell in Delaware or ship to Delaware addresses.[8] Moreover, defendants advertise nationally and here in Delaware, operate a US point of contact for all consumers of its products (including those in Delaware), and offer 24-hour support services for users in Delaware and elsewhere. Because defendants have taken multiple steps to promote the infringing products throughout the United States, market those products

---

[8] Many of those retailers are themselves Delaware citizens. (*See, e.g.*, Ex. 27.)

throughout the United States, distribute those products to retailers with locations in Delaware, and ship to its retailers or Delaware customers directly, they are subject to dual jurisdiction under well-established Delaware law.

### 2.   Personal Jurisdiction Can Be Exercised Without Offending The Due Process Clause.

Defendants' national presence and purposeful sales into the District are such that they should reasonably be expected to submit to personal jurisdiction in Delaware.  Due process is satisfied if the Court finds "'certain minimum contacts' between the defendant and the forum State, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Power Integrations*, 547 F. Supp. 2d at 375 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  That requirement ensures that "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *TriStrata Techs.*, 537 F. Supp. 2d at 641 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Specific personal jurisdiction exists when a defendant purposefully directs activities at residents of the forum and the litigation results from injuries arising out of or related to those activities; general jurisdiction exists when a defendant's contacts with the forum are "continuous and systematic," whether or not the contacts relate to the litigation.  *L'Athene, Inc.,* 570 F. Supp. 2d at 591 (citing *BP Chems. Ltd. v. Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).[9]

---

[9] Defendants' speculation regarding the exact contours of the due process analysis contained in the Supreme Court plurality opinions in *J. McIntyre Machinery, Ltd. v. NiCastro* (131 S. Ct. 2780 (2011)) and *Asahi Metal Industry Co. v. Superior Court of California* (480 U.S. 102 (1987)) is unnecessary and unavailing. Indeed, those cases confirm the "unexceptional proposition" that a defendant may be subject to jurisdiction without entering the forum "where manufacturers or distributors seek to serve a given State's market." *Nicastro*, 131 S. Ct. at 2788. Regardless, even under defendants' most extreme reading of the plurality opinions in those factually distinguishable cases, defendants' direct and indirect offer, sale, and support of infringing products here in Delaware still subject them to personal jurisdiction in this Court. *See, e.g.*, *Eastman Chem.*, 2011 WL 6004079, at *17-18 (holding that stream-of-commerce theory is still Delaware law after *Asahi* and *Nicastro*).

11

Defendants' activities in and directed to Delaware satisfy the Constitutional prong of the jurisdictional inquiry. As stated above, Defendant ASUSTeK is the controlling entity of a multinational brand that aims to be among the "Top-Three" personal computer brands in the United States and the rest of the world. ACI is its United States agent. Defendants market and promote the infringing products throughout the United States, including Delaware. (Ex. 10, 24; Farnan Decl. ¶ 2.) Defendants specifically distribute their products through an established distribution chain, including authorized retailers that operate physical stores in Delaware. (Farnan Decl. ¶¶ 5, 7.) Defendants have established specific programs for authorized retailers that give those retailers advance access to the infringing products. (Exs. 18-19.) Those facts alone are sufficient to establish that defendants have put their products in the stream of commerce with the intent and purpose that they reach the entirety of the United States, including Delaware consumers. *See, e.g., Power Integrations*, 547 F. Supp. 2d at 375 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (O'Connor, J) (reciting non-exclusive examples that demonstrate a defendant's intent to serve a forum such as "advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."); *LG Elecs., Inc. v. ASUSTeK Computers*, 126 F. Supp. 2d 414, 419 (E.D. Va. 2000) ("A defendant corporation purposefully directs its activities at a state if that corporation delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in such state.")

Even more compelling is defendants' direct-sale website, through which they offer, market, sell and ship infringing products directly to Delaware consumers. (Farnan Decl. ¶ 2.) Entities with direct sale websites that receive orders from, make sales to, and ship directly to Delaware customers are subject to personal jurisdiction under Delaware law and under the Due Process Clause. *L'Athene, Inc.*, 570 F. Supp. 2d at 593-94; *see Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) (Evidence of purposeful availment can be "directly targeting its website to the state, knowing interacting with residents of the state via its website, or

12

through sufficient other related contacts"). In *L'Athene*, the Court found jurisdiction over out-of-state defendants who operated and maintained a website offering allegedly infringing products. 570 F. Supp. 2d at 589-90. The Court held that it had personal jurisdiction over the defendants in that case, consistent with the Due Process Clause, because they (like ASUSTeK and ACI here), "received orders and payments from customers in Delaware and shipped their products to Delaware." *Id.* at 593. Defendants' operation of a direct-sale "eStore" that offers, sells, and ships infringing products to Delaware constitutes knowing and purposeful availment of Delaware such that exercising jurisdiction over them does not violate traditional notions of justice and fair play, and does not run afoul of the Constitution.

C.   **Round Rock Has Made A Jurisdictional Showing *At Least* Sufficient To Warrant Jurisdictional Discovery.**

Finally, if (despite the available facts) the Court were to find that Round Rock's allegations are insufficient to confirm personal jurisdiction at this stage, those allegations and the available facts warrant jurisdictional discovery. The Court should permit jurisdictional discovery unless the plaintiff's claim of personal jurisdiction is "clearly frivolous." *Eastman Chem.*, 2011 WL 6004079, at *3. Here, Round Rock has presented publicly available facts that demonstrate that defendants have purposefully directed their activities to Delaware. Accordingly, at a minimum, the Court should permit Round Rock jurisdictional discovery to gather further evidence regarding defendants' direct contacts with this forum.

IV.   **DELAWARE IS THE PROPER VENUE FOR THIS ACTION**

Because this Court has jurisdiction over the defendants, venue in this District is proper. Venue requirements seek "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). With respect to patent actions, an infringement suit may be brought in any judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). For venue purposes, a domestic corporate defendant reside[s] in any judicial district in which it is

subject to personal jurisdiction at the time the action is commenced. *Id.* § 1391(c); *see Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 454 (D. Del. 2009). For alien corporations, venue is proper in any United States District Court. *Id.* § 1391(d); *see Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714, (1972) (holding that section 1391(d) supersedes the patent venue statute, § 1400(b) and that alien corporations are only subject to service of process requirements). Accordingly, venue is proper in this district as to ACI, a domestic corporation, because this Court has personal jurisdiction over it and because the acts of direct and indirect infringement occurred in this District. Venue here is also appropriate for alien corporation ASUSTeK, as it would be in any United States District Court. Accordingly, defendants' motion should be denied.

## V.   DEFENDANTS MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA SHOULD BE DENIED.

As a fallback to their motion to dismiss, defendants seek transfer to the Northern District of California. In doing so, defendants not only disregard the chosen forum of a Delaware citizen-plaintiff, but they also ignore their heavy burden to demonstrate that the balance of convenience factors (or *Jumara* factors) **strongly** support transfer. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail."). But contrary to defendants' arguments, a Delaware corporate plaintiff's choice to file suit in Delaware—its home turf— should not be lightly disturbed. *Shutte*, 431 F.2d at 25.

### A.   Legal Standards

It is the movant's burden to demonstrate that the balance of interests **strongly** weighs in favor of transferring an action to another forum. *Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 300 (D. Del. 2002). Thus, Courts deny a motion to transfer if the factors are evenly balanced, or even if they weigh only slightly in favor of transfer. *Id.* In short, "the plaintiff's choice of venue should not be lightly disturbed." *Intellectual Ventures I LLC v. Checkpoint Software Techs., Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011) (citing *Jumara v.*

*State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).  As a result, "a transfer is not to be liberally granted." *Shutte*, 431 F.2d at 25 (3d Cir. 1970).  Moreover, unless a defendant "is truly regional in character—that is, it operates essentially exclusively in a region that does not include Delaware—transfer is almost always inappropriate." *Intellectual Ventures I*, 797 F. Supp. 2d at 477.  When transfer is sought by a defendant with operations on a national or international scale, that defendant must prove that litigating in Delaware would pose a "unique or unusual burden on its operations." *Id.*

Under controlling Third Circuit law, the Court should consider established private and public interest factors in evaluating a motion to transfer.  The private interest factors include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879.

### B.   Argument

#### 1.   Defendants Must Demonstrate That The *Jumara* Factors Strongly Support Transferring This Action.

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a).  However, the moving party bears the burden "to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer." *1st Source Bank v. Merritt*, 759 F.

Supp. 2d 505, 510 (D. Del. 2011). Defendants ignore that burden. According to defendants, this Court should disregard Round Rock's location, citizenship, convenience, and choice of forum because defendants prefer to litigate in California. That is not just a legally insufficient rationale for transfer, but defendants' partial recitation of the *Jumara* factors does not demonstrate that that the convenience of the parties and witnesses justifies transfer despite Round Rock's location, citizenship, convenience, and choice. The Court should deny defendants' motion for transfer.

### 2. Round Rock's Choice Of Forum Is Given Paramount Consideration Because It Chose To Litigate On Its Home Turf

The first *Jumara* factor—plaintiff's choice of forum—is entitled to "paramount consideration." *L'Athene*, 570 F. Supp. 2d. at 594-95 (citing *Shutte*, 431 F.2d at 25). That factor weighs particularly strongly against transfer where, as here, a corporate plaintiff has made the rational and legitimate decision to bring this case in its state of incorporation, on its "home turf." *CNH Am. LLC v. Kinzenbaw*, No. 08-CV-945-GMS, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009); *Praxair, Inc. v. ATML Inc.*, No. 03-CV-1158, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004) ("as a matter of law" a party's "situs of incorporation" is its "home turf"). Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001). Defendants' burden is particularly true in this case.

Delaware is manifestly more convenient for Round Rock than California. Round Rock is a Delaware corporation with its principal place of business in Mt. Kisco, New York. (D.I. 15 ¶ 1.) Round Rock's three employees are all based in New York and New Jersey. (deBlasi Decl. ¶¶ 2-4.) Round Rock has no corporate presence in California: it has never maintained any office, employees, bank accounts, or other physical presence in California, and has never been licensed to do business there. (deBlasi Decl. ¶¶ 2-4.) Accordingly, that factor weighs heavily against transfer. *See* Ex. 25, *Walker Digital v. Multi-State Lottery Assoc.*, No. 10-CV-1113-RGA, slip op. (D.I. 24) at 2 (D. Del. 2011); *Gielata v. Heckmann*, No. 10-378-LPS-MPT, 2010

16

WL 3940815, at *3 (D. Del. 2010) ("Transfer will be denied … if a change in venue merely shifts the inconvenience to the nonmovant.")

### 3. The Remaining Private Factors Are Neutral Or Weigh Against Transfer.

Nor do the remaining private interest factors support transfer.

*Where the claims arose*: Round Rock's direct and indirect infringement claims arise the manufacturing, selling, using, offering for sale, and importing the infringing products, including offer for sale, sale, use, and indirect and direct infringement here in Delaware. Given defendants' national sales and distribution, Round Rock's claim arose in Delaware at least to the same extent as in any other district. *Personalized User Model LLP v. Google, Inc.*, No. 09-CV-525-JJF, 2009 WL 3460767, at *2 (D. Del. Oct 27, 2009).[10] Thus, this factor weighs against transfer.

*The convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora*: This factor primarily concerns *non-party* witnesses that may be involved at trial. As such, defendants' contentions regarding their own witnesses (they identify none) and documents "carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Simms v. Thomson Reuters Tax and Accounting, Inc.*, No. 10-CV-904-LPS, 2011 WL 4501225, at *4-*5 (D. Del. Sep. 28, 2011); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 198 (D. Del. 1998). With regard to non-parties, defendants have not demonstrated that any non-party would be required at trial, let alone that trial in California would be substantially more

---

[10] *Quinetiq Limited v. Oclaro*, No. 09-CV-372-JAP, 2009 WL 5173705 (D. Del. Dec. 18, 2009) does not require a different conclusion. There, the plaintiff—a foreign corporation with no Delaware ties—accused a specific type of device manufactured and designed only in California of infringing a single patent. *Id.* at *1. Here, the Defendants make, use, sell, offer for sale, and import infringing computers that are marketed and sold in Delaware and nationwide and that infringe multiple patents-in-suit.

convenient for any such witness.[11]  In particular, Round Rock notes that the majority of inventors in this case do not reside in California.  This factor is neutral.

*The convenience of the parties as indicated by their relative physical and financial condition*:  Defendants do not contend that they will suffer a financial hardship by litigating this case in Delaware.  Indeed, "[w]hen transfer is sought by a defendant with operations on a national or international scale, that defendant "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations." *Simms*, 2011 WL 4501225, at *1 (citing *L'Athene, Inc.*, 570 F. Supp. 2d at 592).  Defendants have made no such showing.  On the other hand, Round Rock, a three-employee Delaware corporation, would suffer significant inconvenience if it is required to litigate its claims in California, where it has no corporate presence. (*See* deBlasi Decl. ¶¶ 2-4.)  Accordingly, this factor weighs against transfer.

*The location of books and records*:  This Court has repeatedly recognized that "'recent technological advances have reduced the weight of this factor to virtually nothing.'" *Simms*, No. 10-CV-904-LPS, 2011 WL 4501225, at *6; *see also Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 373 (D. Del. 2009) (same).  Given defendants' sophistication and their ability to easily store and transport information, this factor should be given minimal weight. *ADE Corp.*, 138 F.Supp.2d at 571.  In any event, defendants provide no evidence of any documents and evidence that could not easily be made available in Delaware if necessary. Accordingly, this factor is (at best) neutral.[12]

*Defendants' choice of forum*:  Defendants claim to prefer the Northern District of California.  Under applicable law, that factor standing alone cannot and does not make the proposed transferee forum clearly more convenient than litigation here.

---

[11] Although defendants obliquely reference non-party Micron Technology (D.I. 18 at 15), they do not explain or submit any affidavit as to why Micron would be required at trial in this case, or establish that litigation in California would be more convenient for any Micron witness.

[12] Contrary to defendants' arguments, *In re Link-A-Media*, 662 F.3d 1221 (Fed. Cir. 2011) does not require that this factor weigh in favor of transfer, but simply that it should be part of the Court's analysis where facts provided by the parties so require. *See id.* at 1224.  Defendants establish no such facts.

In sum, the private interest factors do not "strongly favor" transferring this action, as applicable law requires.  And, as shown below, the public interest factors present a compelling reason to keep this case in Delaware.

     **4.**     **The Judicial Economy Gained By Maintaining This Action In Delaware Weighs Strongly Against Transfer.**

Issues of judicial economy often present the deciding factor in a § 1404 transfer analysis. *Human Genome Sci., Inc. v. Genentech, Inc.*, Nos. 11-CV-082-LPS, 11-CV-156-LPS, 11-CV-328-LPS, 2011 WL 2911797, at *11 (D. Del. Jul. 18, 2011).  Where related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.  *Cashedge, Inc. v. Yodlee, Inc.*, No. 06-CV-170-JJF, 2006 WL 2038504, at *2 (D. Del. July 19, 2006); *see, e.g., Air Prods. and Chems., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001) ("[T]he interests of judicial economy dictate that an action involving the same patents-in-suit and most of the same parties should not proceed simultaneously in two different district courts").  Though not mentioned in defendants motion, three other pending actions in this District involve the same patents, the same inventors, overlapping technologies, very similar if not identical infringing products, very similar if not identical infringement, and any allegations of invalidity by the various defendants will likely will present similar if not identical issues.[13]  *See Round Rock Research, LLC v. Dell Inc.*, No. 10-CV-976-RGA (D.I. 12); *Round Rock Research, LLC v. Acer Inc.*, No. 10-CV-977-RGA (D.I. 15); *Round Rock Research, LLC v. Lenovo Group Ltd.*, No. 10-CV-1011-RGA (D.I. 1).  Given the substantial overlapping and identical legal (e.g., claim construction) and factual issues (e.g., infringement, level of skill in the art; applicable prior art if any) presented by the related suits, substantial judicial economy will be achieved with all four cases proceeding in one Court familiar with the patents, technologies, and products—and that substantial judicial economy weighs heavily against transfer here.

---

[13] For example, the actions against the ASUS entities, Acer entities, Lenovo, and Dell involve implementations of standards that will be common to all of the defendants' infringing products.

### 5.     The Remaining Public Interest Factors Weigh Against Transfer

*Enforceability of the judgment*: As shown above, the defendants are subject to personal jurisdiction in Delaware; thus, a judgment could be enforced here, and this factor is neutral.

*The relative administrative difficulty in the two fora resulting from court congestion*: Though defendants do not mention this factor, the time to trial in the District of Delaware for patent cases is significantly shorter than the time to trial in the Northern District of California. For example, a recent scholarly study determined that the average time to trial in the District of Delaware is 2.03 years as opposed to 2.92 years in the Northern District of California. (*See* Ex. 26, Tbl. 5, 6.)  As such, this factor weighs against transfer.

*The local interest in deciding local controversies at home*:   Despite defendants minimization of its interests, Delaware has an interest in adjudicating claims of injury to its corporate citizens—an interest at least as great as the Northern District of California. *See, e.g. Intellectual Ventures I*, 797 F. Supp. 2d at 486; *Autodesk Can. Co. v. Assimilate, Inc.*, No. 08-CV-587-SLR-LPS, 2009 WL 3151026, at *9 (D. Del. Sep. 29, 2009) ("Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations"). Accordingly, this factor weighs against transfer.

In sum, the practical considerations of judicial economy weigh heavily against transferring this action out of Delaware.  As such, defendants have not met their burden to demonstrate why the balance of factors strongly weighs in favor of transfer.

## VI.    CONCLUSION

For all the foregoing reasons, defendants' motions to dismiss for lack of personal jurisdiction should be denied, or, in the alternative, grant Round Rock jurisdictional discovery on defendants.  Defendants' motion to dismiss for improper venue and motion to transfer should also be denied.

DATED:  January 17, 2012                          Respectfully submitted,

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
FARNAN LLP

919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com


Paul A. Bondor (admitted *pro hac vice*)
Jonas R. McDavit (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
(212) 351-3401
pbondor@desmaraisllp.com
jmcdavit@desmaraisllp.com

*Counsel for Plaintiff*