# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROUND ROCK RESEARCH, LLC,  )
                           )
        Plaintiff,  )
                           )
    v.                 )       C.A. No. 11-978-RGA
                           )
                           )      **JURY TRIAL DEMANDED**
ASUSTEK COMPUTER INC. and   )
ASUS COMPUTER INTERNATIONAL, INC.,  )
                           )
        Defendants.  )
                           )

## DEFENDANTS ASUSTEK COMPUTER INC. AND ASUS COMPUTER INTERNATIONAL, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

ASHBY & GEDDES
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

John P. Schnurer
Michael J. Engle
PERKINS COIE LLP
11988 El Camino Real, Suite 200
San Diego, CA  92130
(858) 720-5700
jschnurer@perkinscoie.com
mengle@perkinscoie.com

Dated: February 3, 2012

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  PERSONAL JURISDICTION.......................................................... 2

    A.   There Is No General Jurisdiction Over Either Defendant....................... 2

    B.   Specific Jurisdiction.......................................................................... 2

        1.   No Specific Jurisdiction Over ASUSTeK Taiwan.......................... 2

            a.   Alleged Activities by ASUSTeK Taiwan ....................... 2

            b.   Round Rock's Alter Ego/Agency Theories ................... 5

                (i)   No Showing of Alter Ego ................................. 5

                (ii)  No Showing of Agency.................................... 6

        2.   No Specific Jurisdiction Over Round Rock's Claims Of Infringement of At Least The '109 And '531 Patents by ASUS California ........................................................................... 7

III. TRANSFER ...................................................................................... 7

    A.   Delaware Is Not Round Rock's Home Turf. ..................................... 8

    B.   The Claims Arose In California. ....................................................... 8

    C.   California Is More Convenient For The Third-Party Witnesses........... 8

    D.   California Is More Convenient For The Parties, Because ASUS California And Round Rock's Agent IPVALUE Are Based There....................... 9

    E.   Round Rock's Other Cases In Delaware Involve Unrelated Defendants With Unrelated Accused Products, While Defendants' Litigation Against Its Suppliers Is Contractually Limited To The Northern District Of California. ........................................................................................ 9

IV.  CONCLUSION................................................................................. 10

# TABLE OF AUTHORITIES

CASES                                                                                           PAGE(S)

*Akzona Inc. v. E.I. DuPont de Nemours & Co.,*
   607 F. Supp. 227 (D. Del. 1984)..................................................................6, 7

*Applied Biosystems, Inc. v. Cruchem, Ltd.,*
   772 F. Supp. 1458 (D. Del. 1991)..............................................................4, 6, 7

*Boston Sci. Corp. v. Wall Cardio. Techs., LLC,*
   647 F. Supp. 2d 358 (D. Del. 2009)..................................................................5

*D'Jamoos v. Pilatus Aircraft Ltd.,*
   566 F.3d 94 (3d Cir. 2009)................................................................................2

*Dejana v. Marine Tech., Inc.,*
   No. 10-cv-4029, 2011 WL 4530012 (E.D.N.Y. Sept. 26, 2011) .....................3

*Eastman Chem. Co. v. AlphaPet Inc.,*
   No. 09-971, 2011 WL 6004079 (D. Del. Nov. 4, 2011) ..................................3

*eSpeed, Inc. v. BrokerTec USA, L.L.C.,*
   No. 03-612-KAJ, 2004 WL 2346137 (D. Del. Sept. 13, 2004) .......................4

*Eurofins Pharma US Holdings v. Bioalliance Pharma SA,*
   623 F.3d 147 (3d Cir. 2010)..............................................................................2

*Freres v. SPI Pharma, Inc.,*
   629 F. Supp. 2d 374 (D. Del. 2009)..................................................................2

*Goodyear Dunlop Tires Ops., SA v. Brown,*
   131 S. Ct. 2846 (2011)......................................................................................5

*In re Link_A_Media Devices Corp.,*
   662 F.3d 1221 (Fed. Cir. 2011)........................................................................8

*In re Zimmer Holdings, Inc.,*
   609 F.3d 1378 (Fed. Cir. 2010)......................................................................10

*J. McIntyre Machinery, Ltd. v. Nicastro,*
   131 S. Ct. 2780 (2011)...............................................................................2, 3, 5

*Marten v. Godwin,*
   499 F.3d 290 (3d Cir. 2007)..............................................................................7

*Microsoft Corp v. Geotag Inc.,*
   No. 11-175-RGA, 2012 WL 114128 (D. Del. Jan. 13, 2012).........................9

## TABLE OF AUTHORITIES
### (CONTINUED)

CASES                                                                    PAGE(S)

*Oticon, Inc. v. Sebotek Hearing Sys., LLC,*
   --- F. Supp. 2d ---, 2011 WL 3702423 (D.N.J. 2011) ............................................... 3

*Sears, Roebuck & Co. v. Sears Plc,*
   744 F. Supp. 1297 (D. Del. 1990) ............................................................................. 5, 7

*Telcordia Techs., Inc. v. Alcatel USA, Inc.,*
   No. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) ........................................ 7

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.,*
   676 F. Supp. 2d 321 (D. Del. 2009) ....................................................................... 8, 9

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
   735 F.2d 61 (3d Cir. 1984) ........................................................................................ 2

*Toys 'R' Us, Inc. v. Step Two, SA,*
   318 F.3d 446 (3d Cir. 2003) ...................................................................................... 5

*Trintec Indus., Inc. v. Pedre Prom. Prods., Inc.,*
   395 F.3d 1275 (Fed. Cir. 2005) ................................................................................. 4

*Wacoh Co. v. Kionix Inc.,*
   No. 10-617-RGA, 2012 WL 70673 (D. Del. Jan. 9, 2012) ...................................... 8

STATUTES

28 U.S.C. § 1404 ............................................................................................................ 8

28 U.S.C. § 1406 ............................................................................................................ 7

28 U.S.C. § 1631 ............................................................................................................ 7

Del. Code Ann. tit. 10, § 3104 ...................................................................................... 2

## I.   INTRODUCTION

Defendants' motion should be granted.  This is not a case where a Delaware retailer and its supplier are accused of infringement.  Instead, this is a case where a retailer's supplier (ASUS California) and the supplier's supplier's supplier (ASUSTeK Taiwan) are accused.  Thus, Round Rock (RR) seeks to reach four levels up the distribution chain and stretch this Court's jurisdictional reach from Delaware to California to Singapore and finally to Taiwan.

This Court lacks general jurisdiction over both ASUSTeK Taiwan and ASUS California, and RR has not even attempted to make any showing required for general jurisdiction.

With regard to specific jurisdiction, RR does not challenge any of the facts offered by Defendants.  Among the unchallenged facts are that ASUSTeK Taiwan has no employees, offices, etc. in Delaware and sells its products to a Singapore entity, who subsequently sells some products to ASUS California which then sells to retailers, who may sell in Delaware products accused for some (but not all) of the patents-in-suit.  With regard to ASUSTeK Taiwan, RR simply resorts to conflating ASUSTeK Taiwan (a Taiwanese company) with ASUS California (a California corporation), and specific jurisdiction over ASUSTeK Taiwan has not been shown.

With regard to ASUS California, among the unchallenged facts are that ASUS California has never sold, offered for sale, etc. in Delaware any of the accused products for at least the '109 and '531 patents.  Accordingly, at least that part of RR's Complaint must be dismissed.

Given that, at best, only part of this case could survive in Delaware, transfer to the Northern District of California is particularly appropriate.  That is the only forum where all of RR's allegations against ASUSTeK Taiwan and ASUS California can be litigated (venue and jurisdiction in California being uncontested) and where Defendants' claims of indemnification against suppliers can be heard.  RR has not challenged the fact that no witnesses, documents, or third parties are located in Delaware, while the Northern District of California is home to ASUS California; RR's licensing agent IPVALUE; a third-party inventor and prior art witnesses; and at least some of Defendants' suppliers.  Accordingly, this case should be transferred to California, where Defendants have already initiated an action to resolve all of these issues.

## II.   PERSONAL JURISDICTION

### A.   There Is No General Jurisdiction Over Either Defendant.

As shown in Defendants' opening papers, there is simply no basis for general jurisdiction over either defendant.  RR has made no effort to establish either defendant has the "systematic and continuous" contacts with Delaware required and other than a fleeting footnote asserting the Court need not reach the issue, RR never even mentions general jurisdiction.  [D.I. 22 at 5 n.4.] Thus, the Court should find there is no showing of general jurisdiction over either defendant.

### B.   Specific Jurisdiction.

#### 1.   No Specific Jurisdiction Over ASUSTeK Taiwan.

To establish specific jurisdiction, RR must show that its claims against ASUSTeK Taiwan "arise out of or are related to" *ASUSTeK Taiwan's* contacts with Delaware and that *ASUSTeK Taiwan* has purposefully directed its activities at Delaware.  Del. Code Ann. tit. 10, § 3104(c); *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 386 (D. Del. 2009); *Eurofins Pharma US Holdings v. Bioalliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).  Moreover, RR may not rely on bare pleadings and must respond with actual proofs, not mere allegations.  *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

##### a.   Alleged Activities by ASUSTeK Taiwan.

With regard to ASUSTeK Taiwan, RR offers a series of generalizations, none indicative that RR's claims arise out of contacts by ASUSTeK Taiwan with Delaware.  [D.I. 22 at 1-2.] For example, that the United States is a "very important market" for ASUSTeK Taiwan is in no way indicative that RR's claims of infringement for these patents-in-suit arise out of or relate to purposeful contact *with Delaware* by ASUSTeK Taiwan.  *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009) ("Pilatus's efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment.").[1]

---

[1] All of RR's arguments and cases regarding stream of commerce, dual jurisdiction, and targeting the U.S. (rather than Delaware) are moot in view of the Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2793 (2011) (rejecting assertion that "a producer is

While RR offers attorney argument that ASUSTeK Taiwan "sell[s] infringing products directly to Delaware consumers through its 'eStore,'" [D.I. 22 at 3], there are no proofs submitted to support that claim and it is actually contradicted by the documents submitted by RR.  As RR concedes, ASUS California (not ASUSTeK Taiwan) operates the eStore, through which a limited number of refurbished items may be ordered.[2]  [D.I. 22 at 2.]  Indeed, the copyright notice on the eStore website (D.I. 25-1), the email receipt received after purchase (D.I. 25-2 at 4), and the invoice received with the actual product (D.I. 25-3) are all clearly labeled "ASUS Computer International," which is ASUS California, not ASUSTeK Taiwan.  Thus, there is no proof offered that ASUSTeK Taiwan has ever sold anything to anyone in Delaware.  Indeed, RR has not challenged the declaration submitted by ASUSTeK Taiwan that it sells its products to a Singapore entity and not to customers in Delaware.  [D.I. 20 ¶ 9.]

Similarly unsupported is RR's attorney argument that Defendants "provide service and support for the infringing products directly to consumers in Delaware (particularly relevant to Round Rock's indirect infringement claims)."  [D.I. 22 at 5.]  The proof submitted in support of this is in ¶ 3 of the Farnan declaration, where Mr. Farnan avers: "ACI [i.e., ASUS California] provides a 24-hour, 7-days-a-week support through on-line, chat, email and telephone."

---

subject to jurisdiction…so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states") (Breyer, J., concurring).  "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789 (plurality).  After *McIntyre*, "the national market theory is no longer viable." *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, --- F. Supp. 2d ---, 2011 WL 3702423, at *9 (D.N.J. 2011); *Dejana v. Marine Tech., Inc.*, No. 10-cv-4029, 2011 WL 4530012, at *5-6 (E.D.N.Y. Sept. 26, 2011).  RR's reliance on a national market, with no evidence of Defendants targeting Delaware in particular, is thus insufficient to meet its burden under dual jurisdiction.  Whatever the reach of a dual jurisdiction theory in Delaware, it certainly cannot be farther than that allowed by the U.S. Constitution.  The only post-*McIntyre* case cited by RR did not find personal jurisdiction under a national market theory as RR seems to suggest, but rather merely granted very limited jurisdictional discovery to identify sales and distribution *by defendants* of products *in Delaware. Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-971, 2011 WL 6004079, at *18 (D. Del. Nov. 4, 2011).

[2] ASUS California's eStore sells parts and accessories and a limited number of refurbished computers.  New computers are not available for purchase from ASUS California.  [*See* Exhs. 1-4 to Reid Decl.]  Based on the accused products identified by RR, none of the parts or accessories available through ASUS California's eStore are accused of infringement.

Obviously, that statement only refers to ASUS California, not ASUSTeK Taiwan.

Likewise unsupported is RR's attorney argument that Defendants "advertise their products in Delaware stores and newspapers." [D.I. 22 at 5.]  The proof submitted by RR related to this issue is an advertisement by Best Buy, not ASUSTeK Taiwan or ASUS California.  As noted above, in order to demonstrate that this Court has specific jurisdiction over ASUSTeK Taiwan, RR must offer proofs that its claims arise out of activity by *ASUSTeK Taiwan*, not Best Buy.  *Trintec Indus., Inc. v. Pedre Prom. Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("Trintec refers to the availability of Pedre products on non-Pedre websites, but those sites would support jurisdiction only if Pedre had some responsibility for the third party's advertising.").

The rest of RR's alleged proofs with regard to ASUSTeK Taiwan are that ASUSTeK Taiwan operates a website that provides information on its products.  For example, RR notes that manuals for ASUSTeK Taiwan's products may be found on the website, though neither the manuals nor the website itself is accused of infringing.[3]  [D.I. 22 at 9.]  It is well settled that mere accessibility of a website does not confer jurisdiction.  *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. 03-612, 2004 WL 2346137, at *3 (D. Del. Sept. 13, 2004) ("Mere accessibility of a website, though, is not a matter of much moment.  It is interactivity and the conducting of business over the Internet that carries jurisdictional consequences.").  Moreover, national advertising, such as that alleged on ASUSTeK Taiwan's website, does not constitute targeting Delaware.  *See Applied Biosystems, Inc. v. Cruchem, Ltd.*, 772 F. Supp. 1458, 1467 (D. Del. 1991) ("Advertising in widely distributed national magazines does not qualify as transacting business in Delaware.").  Here, RR does not assert and has offered no proofs that ASUSTeK Taiwan operates an interactive website (as opposed to ASUS California), that RR's claims of infringement arise out of ASUSTeK Taiwan's website, that ASUSTeK Taiwan carries out business in Delaware over

---

[3] RR also make various other assertions about ASUSTeK's Taiwan's website, such as that the website provides information about recycling ("Takeback Services").  [D.I. 25 ¶ 4; D.I. 25-7 at A-9.]  RR's claims do not arise from recycling.  Moreover, ASUSTeK Taiwan does not perform recycling but instead simply directs users to various state laws (none Delaware) or third party recycling companies (none in Delaware).  Exh. 5.

the Internet, or that ASUSTeK Taiwan has specifically directed its website at Delaware.
Accordingly, none of the websites cited by RR are proofs of specific jurisdiction over ASUSTeK
Taiwan. *Toys'R'Us, Inc. v. Step Two, SA*, 318 F.3d 446, 454 (3d Cir. 2003).

Finally, whether under general jurisdiction or specific jurisdiction, the Supreme Court has
made clear that merely having United States distributors (even exclusive distributors or
subsidiaries) does not give rise to personal jurisdiction. *Goodyear Dunlop Tires Ops., SA v.
Brown*, 131 S. Ct. 2846, 2852, 2855 (2011) (holding sales by subsidiaries and sister corporations
cannot give rise to general jurisdiction); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780,
2790 (2011) (plurality) (finding no specific jurisdiction despite defendant appointing a U.S.
distributor), 2796-97 (Ginsburg, J., dissenting) (explaining distributor was exclusive).

### b.  Round Rock's Alter Ego/Agency Theories.

Though not explicitly stated, much of RR's Opposition appears to be founded on the
assertion that ASUS California is either ASUSTeK Taiwan's alter ego or agent and that,
therefore, ASUS California's contacts with Delaware are attributable to ASUSTeK Taiwan. RR
has offered no proofs which could establish either theory.

### (i)  No Showing of Alter Ego.

In order to establish that one company is the alter ego of another, "the plaintiff must show
fraud, injustice, or inequity in the use of the corporate form." *Sears, Roebuck & Co. v. Sears
Plc*, 744 F. Supp. 1297, 1304 (D. Del. 1990). Factors for making this determination include
whether (1) the corporation was adequately capitalized, (2) the corporation was solvent,
(3) dividends were paid, (4) corporate records were kept, (5) officers and directors functioned
properly, (6) other corporate formalities were observed, (7) the dominant shareholder siphoned
corporate funds, and (8) the corporation functioned as a façade for the dominant shareholder.
*Boston Sci. Corp. v. Wall Cardio. Techs., LLC*, 647 F. Supp. 2d 358, 366-67 (D. Del. 2009).

In the present case, RR is silent on at least factors 1, 2, 5, and 7. With regard to the other
factors, citing ASUSTeK Taiwan's Annual Report, RR offers attorney argument that "ASUSTeK
Taiwan controls the activities its [sic] subsidiaries to manage its resources and control company

costs." [D.I. 22 at 2 (citing D.I. 24-3 at 67).] In fact, the cited portion of the Annual Report refers to controlling ASUSTeK Taiwan's "availability of resources and the control of costs" (i.e., manufacturing resources and costs); it does not say that ASUSTeK Taiwan controls its subsidiaries. Again citing the Annual Report, RR asserts that "ASUSTeK's subsidiaries income and loss are integrated with the parent company in its audited financial statements." [D.I. 22 at 2.] Consolidated reports are required as part of GAAP reporting, and the existence of such reports is not indicative of whether ASUSTeK Taiwan and ASUS California keep separate books. In fact, the very site where RR got the Annual Report clearly shows that separate books are kept because financial results are available for the "parent only" (i.e., just ASUSTeK Taiwan) or "consolidated" with all subsidiaries. Exh. 6. Finally, RR argues that "subsidiary employees receive stock dividends and stock bonuses of the parent company." [D.I. 22 at 2.] The page cited merely indicates that subsidiary employees *could* receive stock as a bonus *if* the annual employee bonus is paid in stock, but the same page clearly shows that the employee bonus for 2010 was paid entirely in cash. [D.I. 24-3 at 51.] Moreover, that an annual bonus to subsidiary employees could be paid in cash or stock is not an indicator of "fraud, injustice or inequity in the use of the corporate form." Thus, RR has not offered the proof necessary to pierce the corporate veil and establish ASUS California was the alter ego of ASUSTeK Taiwan.

### (ii)      No Showing of Agency.

Agency theory requires examining "the degree of control which the parent exercises over the subsidiary. The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business." *Applied Biosys.*, 772 F. Supp. at 1463 (citation omitted). RR has failed to present any significant elements. While RR asserts "ACI's Chairman, Jonney Shih, is also the chairman of ASUSTeK," [D.I. 22 at 7], RR has not identified any other officers or employees that are shared, especially anyone in charge of day-to-day operations. *Akzona Inc. v. E.I. DuPont de Nemours & Co.*, 607 F. Supp. 227, 238 (D. Del. 1984) (finding no agency despite some overlap in the boards of directors). Similarly, ASUSTeK

Taiwan's inclusion of subsidiaries in its consolidated financial statements is required under GAAP and has no bearing on whether there is "pervasive interference" in day-to-day operations. *Id.* at 238 (finding no agency despite parent taking credit for subsidiary's projects in parent's annual report); *Sears*, 744 F. Supp. at 1306.[4]  Once again, RR has not offered proofs of specific jurisdiction over ASUSTeK Taiwan, or that ASUS California is ASUSTeK Taiwan's agent.

### 2.  No Specific Jurisdiction Over Round Rock's Claims Of Infringement Of At Least The '109 And '531 Patents By ASUS California.

It is elemental that the plaintiff must offer proof showing this Court has jurisdiction to hear *all* the asserted claims and that specific jurisdiction is assessed on a claim-by-claim basis. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).  While RR alleges its counsel was able to purchase a product that allegedly infringes five patents-in-suit, [D.I. 22 at 7 n.6], RR is silent as to the jurisdictional basis for its allegations related to the remaining five patents: U.S. Patent Nos. 5,255,109; 5,938,764; 5,991,843; 7,101,727; and 7,336,531.[5]  Moreover, Defendants' evidence that ASUS California has never sold the accused products for at least the '109 and '531 patents to customers in Delaware is unchallenged.  Accordingly, RR's claims for at least the five patents above (and particularly the '109 and '531 patents) must be dismissed from this action.

## III.   TRANSFER

Because this Court lacks personal jurisdiction over ASUSTeK Taiwan and at least part of RR's claims against ASUS California, the Court *must* dismiss or transfer those claims.  28 U.S.C. §§ 1406(a), 1631.  The *Jumara* factors need only be considered for the claims, if any, where the Court finds jurisdiction and venue are proper, yet even then transfer is appropriate.

---

[4] In addition, "only the precise conduct shown to be instigated by the parent is attributed to the parent; the rest of the subsidiary's actions still pertain only to the subsidiary." *Applied Biosys.*, 772 F. Supp. at 1464.  RR has not offered proofs that ASUSTeK Taiwan "instigated" any contacts by ASUS California with Delaware.

[5] For the same reasons, jurisdictional discovery should be denied.  "Since plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied." *Telcordia Techs., Inc. v. Alcatel USA, Inc.*, No. 04-874, 2005 WL 1268061, at *9 (D. Del. May 27, 2005) (quotation omitted).

A.    **Delaware Is Not Round Rock's Home Turf.**

"Under § 1404(a) 'home turf' refers to a corporation's principal place of business."

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 330 (D. Del.

2009).  RR concedes that "its principal place of business [is] in Mount Kisco, New York" and all

its employees "are based in New York or New Jersey." [D.I. 23 ¶¶ 2-3.]  The Federal Circuit

also recently held that a place of incorporation is not entitled to "heavy reliance" and "[n]either §

1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry." *In re

Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223-24 (Fed. Cir. 2011).

B.    **The Claims Arose In California.**

To the extent RR argues a trivial number of sales arose in Delaware, [D.I. 19 ¶ 11 ("less

than 0.02% of ASUS California's total revenue")], that pales in comparison to the nearly 100%

of sales made from ASUS California's headquarters in Fremont, California.

C.    **California Is More Convenient For The Third-Party Witnesses.**

There are multiple third-party inventor and prior art witnesses in the Northern District of

California.[6]  [D.I. 18 at 15-16.]  The majority of the remaining inventors are in Idaho, which is

significantly closer to California than Delaware (500 miles vs. 2,100).  [*Id.*]  Finally, some of

Defendants' suppliers are in the Northern District of California, further weighting this factor in

favor of transfer.[7]  By contrast, RR has not identified a single witness in Delaware.  "The fact

that plaintiff has not identified a single material witness who resides in Delaware rather than

California is telling and weighs in favor of transfer." *Teleconference*, 676 F. Supp. 2d at 333.

---

[6] Given even the inventors of the patents-in-suit are third parties, it is disingenuous for RR to
claim "defendants have not demonstrated that any non-party would be required at trial." [D.I. 22
at 17.]  RR purchased the patents from third-party Micron.  [Exhs. 7-8.]  Thus, *all* of the
witnesses related to invention, prosecution, Micron embodying products, and Micron prior art
will be third parties.  RR itself will almost certainly call at least the inventors to testify at trial.
[7] This Court has also stated: "[e]x-employees (and, with the passage of time from now until trial,
it is possible, if not probable, that some employees will become ex-employees) would not be
subject to this Court's subpoena power, but would likely not move out-of-state and therefore
would continue to be subject to the subpoena power in the Northern District of California."
*Wacoh Co. v. Kionix Inc.*, No. 10-617-RGA, 2012 WL 70673, at *4 (D. Del. Jan. 9, 2012).

**D.    California Is More Convenient For The Parties, Because ASUS California And Round Rock's Agent IPVALUE Are Based There.**

ASUS California is headquartered in Fremont, California, and hence its current and former employees are predominantly in the Northern District of California. [D.I. 18 at 14; D.I. 19 ¶ 14 (noting 93% of ASUS California's employees are based in Fremont, California).]

RR's appeal that its "three-employee" corporation would "suffer significant inconvenience if it is required to litigate its claims in California, where it has no corporate presence" underscores the paucity of RR's arguments and why California is the better forum. First, RR's "agent to commercialize Round Rock's patents" is located (if not headquartered) in the Northern District of California. [Exhs. 8-11.] Second, RR has presented no evidence that *any* of its remaining three employees would be required at trial. Given that it bought the patents from Micron, the likely witnesses will be employees of third-party Micron, not RR. Third, none of RR's employees are in Delaware so they would have to travel regardless of forum. Fourth, even in the unlikely event RR sent all three employees to trial, the time and cost of sending three RR employees to California is significantly less than sending dozens of ASUS California sales, marketing, support, and other witnesses to Delaware to address all ten patents. Fifth, at least one of RR's employees travels to California regularly for licensing and litigation. [Reid Decl. ¶¶ 4, 6, 9.] Finally, RR's primary business is litigation and licensing. It can hardly complain that its employees may have to attend trial when litigation is RR's entire business model. *See Microsoft Corp v. Geotag Inc.*, No. 11-175-RGA, 2012 WL 114128, at *2 (D. Del. Jan. 13, 2012) ("Geotag's business is primarily litigation. There is no evidence that when it comes to litigation Geotag is on anything other than an equal footing with [Microsoft and Google].").

**E.    Round Rock's Other Cases In Delaware Involve Unrelated Defendants With Unrelated Accused Products, While Defendants' Litigation Against Its Suppliers Is Contractually Limited To The Northern District Of California.**

RR misleadingly suggests that it has three other cases in Delaware "involving the same parties and issues" with "very similar if not identical infringing products" and "very similar if not identical infringement." [D.I. 22 at 19.] The *facts*, however, are that none of the defendants

are related to Defendants here and there is no overlap in the accused products.[8]  When looking at the *facts*, judicial economy favors letting this case proceed in California.[9]  Defendants' action in California not only involves all the patents-in-suit but also includes various suppliers of Defendants who are obligated to defend Defendants from claims of infringement.  By contract, Defendants can only bring the action against its suppliers in the Northern District of California. Defendants risk inconsistent results and duplicate expenses if forced to litigate in both California (as required by the suppliers) and Delaware (as desired by RR).

Defendants have also conclusively shown that Defendants have not sold *any* of the accused products for at least two patents-in-suit in Delaware, and as such, the Court must dismiss or transfer at least those two patents.  Even if RR could show personal jurisdiction were proper for the remaining eight patents (which it has not), it makes little sense to litigate eight patents in Delaware when the remaining two patents can only be litigated in California.

## IV.    CONCLUSION

For the reasons set forth above and in Defendants' opening brief, Defendants respectfully request that the Court dismiss this case for lack of personal jurisdiction and improper venue.  In the alternative, Defendants respectfully request that this case be transferred to the Northern District of California, which is significantly more convenient for the parties and the third-parties.

---

[8] Delaware has no more experience with the patents than California because all the suits were filed on the same day and are in the "infancy stages of litigation," with the defendants having not yet filed answers in three of the four cases.  *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (ordering transfer when "the cases involve different products with only a single overlapping patent and no defendant is involved in both actions").  It is also speculative to assume that any—let alone all—of the cases will proceed in Delaware.  Acer America and Gateway, for example, are based in California and may well move to transfer to California.

[9] To the extent RR argues that in the past the time to trial has been slightly longer in the Northern District of California, that data does not reflect the incredible explosion of patent cases filed in Delaware in the past year.  For example, RR's numbers show an average of roughly 100 patent cases per year in Delaware.  [D.I. 24-26 at Table 2 (showing 1017 patent cases from 2000 to March 17, 2010).]  However, that number skyrocketed to 484 new patent cases against 2458 defendants filed in Delaware in 2011.  Exh. 12.  That compares to 225 cases against 771 defendants filed in the Northern District of California.  *Id.*  The difference is even more dramatic given that Delaware has only four judgeships (~120 new patent cases per judge) compared to the Northern District of California's fourteen judgeships (~16 new patent cases per judge).

ASHBY & GEDDES

/s/ *John G. Day*

_____

John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
Andrew C. Mayo (I.D. #5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

John P. Schnurer
Michael J. Engle
PERKINS COIE LLP
11988 El Camino Real, Suite 200
San Diego, CA  92130
(858) 720-5700
jschnurer@perkinscoie.com
mengle@perkinscoie.com

Dated: February 3, 2012