IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROUND ROCK RESEARCH LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 11-978-RGA |
| ASUSTEK COMPUTER INC., et al., | : |
| Defendants. | : |

Brian Farnan, Esq., Wilmington, Delaware; Paul Bondor, Esq. (argued), New York, New York; Attorneys for Plaintiff.

John Day, Esq., Wilmington, Delaware; James Pistorino, Esq. (argued), Palo Alto, California; Attorneys for Defendants.

MEMORANDUM OPINION

Wilmington, Delaware
August 20, 2013

ANDREWS, U.S. DISTRICT JUDGE:

The Defendants ASUSTeK Computer Inc. and ASUS Computer International, Inc. ("ACI") filed a Motion to Dismiss [for lack of personal jurisdiction], or, in the Alternative, to Transfer [to the Northern District of California]. (D.I. 17). The motion was briefed (D.I. 18, 22, 28) and argued. (D.I. 33). The Court granted jurisdictional discovery, and received further jursidictional briefing (D.I. 49, 54) and supplemental jurisdictional briefing. (D.I. 58, 59).

ASUSTeK is a Taiwanese company. (D.I. 15, ¶2). It has no physical presence in the United States. ACI is a California company, with a principal place of business in Fremont, California. (*Id.* ¶3). It is a wholly-owned subsidiary of ASUSTeK. (*Id.*). ASUSTeK produces ASUS brand computers and computer-related products. The Amended Complaint alleges generally that ASUS brand products infringe Plaintiff's ten asserted patents. The Amended Complaint specifically names various ASUS products as infringing, to wit, the VW246H LCD monitor, Eee Slate tablet computers, CM desktop computers, Eee "All-in-One" personal computers, Bamboo, U, UL, F, N, M, X, A, G, K, K52, UX, and B series notebook computers, Internet Radio series internet radios, Skype Phone AiGuru S2 internet phones, Essentio and Eee desktop computers, T and R servers, and AMD and Intel series motherboards. (D.I. 15). It appears that ASUSTeK sells these computer products to its Singapore subsidiary, ASUS Technology Pte Ltd, which then sells computers to ACI (D.I. 51, Exh. 4, Depo. at 299), which then sells computers to retailers such as Best Buy and Office Depot, which, among other things, sell the computers in Delaware. ACI also sells its full line of products directly to Delaware consumers. (*Id.* at 46). Over 6½ years, ACI's U.S. sales exceed $5,000,000,000. (*Id.* at 232).

What are the procedural principles relevant to consideration of a motion to dismiss for

lack of personal jurisdiction? The plaintiff bears the burden of showing personal jurisdiction. "[I]n reviewing a motion to dismiss under Rule 12(b)(2), [the court] must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (internal quotation omitted). "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Thus, when the plaintiff has a plausible jurisdictional theory, but insufficient evidence to prove the theory, the plaintiff should be granted jurisdictional discovery.

> Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," the plaintiff's right to conduct jurisdictional discovery should be sustained.

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citations omitted).

What are the substantive principles relevant to the existence of personal jurisdiction? In this Court, a plaintiff has to show the existence of personal jurisdiction under Delaware law, and that such jurisdiction is not inconsistent with the Constitution's requirement of due process. For a non-resident defendant, Delaware law is set forth in its long-arm statute. *See* 10 Del. C. §3104. The due process analysis, in a patent case such as this, must follow decisions of the Supreme Court and the Federal Circuit. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994).

Interpretation of the Delaware long-arm statute has resulted in some decisions that offer

conflicting principles. For example, analysis of the long-arm statute is a separate undertaking from analysis under the due process clause, and yet it appears that the results should be the same. Consider:

> Delaware courts apply a two-step analysis in determining the issue of personal jurisdiction over a nonresident. First, we must consider whether Delaware's long arm statute is applicable, recognizing that 10 Del.C. § 3104(c) is to be broadly construed to confer jurisdiction *to the maximum extent possible under the Due Process Clause*. Next, the court must determine whether subjecting the nonresident defendant to jurisdiction in Delaware violates the Due Process Clause of the Fourteenth Amendment.

*Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992) (citations omitted) (emphasis added). Further:

> The existence of personal jurisdiction depends upon two independent considerations-the long arm statute and due process. Satisfying the first part of this analysis simply means that the legislative requirements of service of process have been met. It does not mean that due process is satisfied, nor should it be confused with that concept. Step one is nothing more than an application of the language of the long arm statute while the second step involves issues of constitutional dimensions.

*Id.* at 483 (citation omitted).

In relevant part, the Delaware long arm statute provides:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; . . .

10 Del. C. § 3104. The first three subsections provide for specific jurisdiction while the fourth provides for general jurisdiction. *See Boone v. Oy Partek AB*, 724 A.2d 1150, 1155 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998).

> [D]ue process requires ... that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ... [T]he minimum contacts must be "purposeful" contacts.

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (citations omitted).

> [E]ven if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied. . . . In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.

*Id.* at 1568 (footnote omitted).

There are ten counts against ACI and ASUSTeK. It appears to me that ACI concedes specific personal jurisdiction over it for the claims involving eight of the ten patents. (D.I. 54, pp. 5-7). The parties' arguments, as to ACI, concentrate on whether there is personal jurisdiction over the claims involving the '109 and '531 patents. (*See* D.I. 49, pp. 5, 6, 16-17, and D.I. 54, pp. 5-7). The fact that there is specific personal jurisdiction against a defendant on one or more claims of a complaint does not by itself give personal jurisdiction on other claims. In other words, personal jurisdiction is evaluated on a claim-by-claim basis. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001).

Further, the existence of personal jurisdiction is evaluated at the time the complaint was filed. *See Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F.Supp.2d 690, 697 (D.Del. 1998).[1]

For the '109 patent, the only named accused product is the "VW246H LCD monitor." (D.I. 15, ¶ 22). Defendants state that the only evidence provided in relation to this particular monitor is: (1) a customer who purchased such a monitor on September 20, 2009, from Newegg.com registered it, using a Newark, Delaware address, with ACI on March 24, 2011 (D.I. 51, Exh. 14 (at 017)); (2) a customer who purchased a monitor on August 22, 2010, from Newegg.com registered it, using a Newark, Delaware address, with ACI on August 31, 2010 (D.I. 51, Exh. 11 (at 914)); and (3) a customer returned to ACI a monitor for service using a Wilmington, Delaware, address. (D.I. 51, Exh. 15). Defendants argue that this evidence falls short of showing that the Defendants sold the monitor to anyone in Delaware.

Plaintiff does not specify any evidence that the monitor was sold in Delaware, although it does assert that other unaccused products that infringe the patent are sold in Delaware. (D.I. 49, p.5). I do not accept that Plaintiff can show personal jurisdiction by accusing one product in the complaint and asserting jurisdiction based on a product not named in the complaint. Plaintiff cites the registration and service information cited by Defendants, but in my opinion, that information is insufficient to support an allegation of selling, offering to sell, or using in Delaware.[2] Thus, I do not think Plaintiff has established specific personal jurisdiction for the

---

[1] To the extent that sales exist post-dating a complaint, it may not be particularly consequential to dismiss a complaint when the Plaintiff could then re-file the complaint and assert jurisdiction based on the same sales.

[2] I am not sure that this finding is entirely consistent with the resolution of a similar issue in *Graphics Properties v. ASUS Computer Int'l, Inc.*, 2013 WL 3295618, *3 (D.Del. June 28, 2013). I would only note that the physical address a person uses in communication with ACI is

'109 patent.

For the '531 patent, the only named accused product is "the UX series [of] notebook computers." (D.I. 15, ¶ 103). Defendants admit that at least a couple of dozen UX series notebook computers have been sold in Delaware, but argue that there is no showing that any of the sales predate the complaint, and, in any event, none of the sales were by the Defendants. (D.I. 54, p. 6). Plaintiff mostly relies upon the evidence of sales in Delaware, albeit without specifically addressing the timing of the sales. Thus, recognizing that Plaintiff has the burden of proof, I do not think Plaintiff has established specific personal jurisdiction for the '531 patent.

I turn to the issue of personal jurisdiction over ASUSTeK.[3]

The Plaintiff does not argue that there is general jurisdiction over the defendants. (D.I. 49, p.16). It argues that there is specific jurisdiction and "dual jurisdiction." Its briefing asserts that long-arm jurisdiction exists under "10 Del. C. § 3104(c)(1)-(3)." (D.I. 49, pp. 15, 17). These provisions of the Delaware Code permit specific jurisdiction over a non-resident defendant, but they do not help Plaintiff here. Section 3104(c)(1) requires that the defendant perform an act in Delaware, which does not occur "[w]hen a manufacturer passes title to goods to a third party outside of Delaware." *Boone v. Oy Parte AB*, 724 A.2d 1150, 1156 (Del. Super. Ct. 1997), *aff'd*, 707 A.2d 765 (Del. 1998). Section 3104(c)(2) is limited to claims that have their

---

at best circumstantial evidence of where the product is used.

[3] Whether there is personal jurisdiction over ASUSTeK seems to be a growing cottage industry. *See AFTG-TG v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012) (no jurisdiction in Wyoming); *Ricoh Co., Ltd., v. ASUSTek Computer, Inc.*, 481 F.Supp.2d 954 (W.D. Wisc. 2007) (no jurisdiction in Wisconsin); *LG Electronics, Inc. v. ASUSTeK Computers*, 126 F.Supp.2d 414 (E.D. Va. 2000) (jurisdiction in Virginia). The issue was not pursued by the Plaintiff in *Graphics Properties*, *supra*, 2013 WL 3295618, at *1.

"origin in the asserted [contract]." *LaNuova D&B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (Del. 1986). While shipping goods – a contractual act – could provide a basis for jurisdiction, the shipping does not occur in Delaware if the title to the goods passed before the goods reached Delaware. *Boone,* 724 A.2d at 1156. When a defendant sells, or offers to sell, an infringing product, that would constitute tortious injury. When the act occurs in Delaware, then the prerequisites for § 3104(c)(3) are met. *See TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F.Supp.2d 635, 640 (D.Del. 2008); *Wright v. American Home Products Corp.*, 768 A.2d 518, 527 (Del. Super. 2010).

"Dual jurisdiction" – that is, jurisdiction under a blend of sections (c)(1) and (4) – might have some application to patent cases. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F.Supp.2d 365, 372-73 (D.Del. 2008). *See also Liqui-Box Corp. v. Scholle Corp.*, 2013 WL 3070872, *5 (D.Del. June 17, 2013); *Belden Techs, Inc. v. LS Corp.*, 829 F.Supp.2d 260, 267-68 (D.Del. 2010). I am not convinced, however. The "dual jurisdiction" mischief started in the Delaware Supreme Court, which, in *LaNuova,* added a footnote that is a strong candidate for the *dicta* Hall of Fame.

> It is conceivable that a tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.

513 A.2d at 768 n.3. It seems to me a reasonable interpretation of this footnote would be that the Supreme Court was doing nothing more than stating the obvious, that is, that the (c)(1) and (c)(4) subsections involve overlapping concepts, and there thus might be times when the set of facts that establishes general jurisdiction under (c)(4) also establishes specific jurisdiction under (c)(1),

and thus the jurisdiction would be "dual." Perhaps an interesting observation, but one meaningless for development of the law, and hence properly relegated to a footnote. And the Delaware Supreme Court has not had occasion to revisit the observation in the last twenty-five years. Instead, trial courts have analyzed it.

In *Boone,* the Superior Court first held that "the specific jurisdiction provisions of § 3104 [including § 3104(c)(1)] do not confer jurisdiction in this case." 724 A.2d at 1156. The Court explained that (c)(1) did not apply because the defendant had done no act in Delaware from which plaintiff's claims arose. A little later, however, the Court secondly held that "§ 3104(c)(1) is satisfied in this instance." *Id.* at 1158. It explained that it was not important whether the defendant had done an act in Delaware. *Id.* The Superior Court explained that the way it got from the first holding (no jurisdiction) to the second holding (jurisdiction) was by considering the goal of the statute (provide Delaware residents a means to get redress against non-residents) and getting to that goal using due process cases embracing the "stream of commerce" theory. *Id.* at 1156-57. The Superior Court interpreted *LaNuova*'s footnote 3 as endorsing this analysis, which it summarized as the long arm statute providing jurisdiction "*via* §§ 3104(c)(1) and (c)(4)." *Id.* at 1158. In doing so, the Superior Court was consistent with one principle of the Supreme Court (the long arm statute should reach non-residents to the maximum extent possible) but was inconsistent with two other principles (the long arm statute should be separately analyzed from due process considerations, and its interpretation should flow from the statutory language). It is true that the Delaware Supreme Court summarily affirmed the Superior Court's decision, but while it described the decision as "well-reasoned," it also limited its basis for affirmance to the Superior Court's § 3104(c)(4) holding (which seems inconsistent with approval of the Superior

Court's "dual" analysis). 707 A.2d at 765.

The Superior Court next addressed "dual jurisdiction" in *Wright v. American Home Products Corp.*, 768 A.2d 518 (Del. Super. 2000). It described *Boone* as having held that it had "specific and general long arm jurisdiction under §§ 3401(c)(1) and (4)." *Id.* at 529. The Superior Court found that the "clear pattern of repeated activity" provided a basis for jurisdiction "under §§ 3104(c)(1) and (4)." *Id.* at 530.

This Court has subsequently taken the baton from Superior Court. In *Power Integrations* and *Belden Technologies*, the Court has explicitly held that even though no individual subsection of the long arm statute is met, there still may be jurisdiction under the "dual jurisdiction" theory. *Power Integrations*, 547 F.Supp.2d at 373-74; *Belden Technologies*, 829 F.Supp.2d at 267. "The dual jurisdiction concept arises from at least partial satisfaction of subsections (1) and (4) of the Delaware long-arm statute." *Id.* While I agree with my colleagues that this is the conclusion to be drawn from the Superior Court cases, I am not bound to follow those cases.[4] *See, e.g., Safeco Ins. Co. v. Wetherill*, 622 F.2d 685, 688-89 (3d Cir. 1980); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661-63 (3d Cir. 1980). I give the Superior Court's cases "some weight." If the Supreme Court's footnote were clear, I would give that controlling weight, but, as I have noted, I do not think the footnote supports the conclusion that Superior Court has interpreted it to have. As noted, to do so would involve violation of two of the precepts that the Supreme Court has given for the interpretation of the long arm statute. Thus, I cannot agree, or predict, that the Delaware Supreme Court would recognize "dual jurisdiction." *LaNuova*, on which the theory is

---

[4] There is a third Superior Court case to the same effect. *See Crane v. Home Depot*, 2008 WL 2231472, *4 (Del. Super. May 30, 2008) ("'dual jurisdiction' [arises] when (c)(1) and (c)(4) are partially satisfied").

-10-

based, does not mention "stream of commerce." There is not a hint in the Delaware cases that some other state's courts have similarly interpreted that state's long arm statute.[5] Thus, under these circumstances, I cannot defer to the Superior Court's interpretation of Delaware law.

Looking at the Delaware long-arm statute, and applying the above principles, but not the dual jurisdiction analysis, it seems clear to me that there is no jurisdiction over ASUSTeK. It does nothing that begins to meet §§3014(c)(1), (2), or (3). It does not transact any business in Delaware. It does not perform any work in Delaware. It does not contract to do anything in Delaware. It does not sell or offer to sell any computers in Delaware. Thus, for ASUSTeK, I do not believe there is any direct basis to exercise personal jurisdiction over it.

Plaintiffs also seek long-arm jurisdiction over ASUSTeK on the theory that ACI is its agent. The legal basis for such an approach relies upon the long arm statute's provision that it also applies not only to a defendant's activities, but also when "its agent" performs such activities. There are two possible theories.

> Under the alter ego theory, a court may attribute the actions of a subsidiary to its parent and ignore corporate boundaries if the court finds that the subsidiary is a mere "alter ego" of the parent. This theory properly applies where plaintiff shows some fraud, injustice, or inequity in the use of the corporate form, including a showing that the two corporations did not observe corporate formalities.

> Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction. This theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts. The agency theory may be applied not only to parents and subsidiaries, but also to companies that are two arms of the same business group, operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.

---

[5] *LaNuova*'s footnote (and theory) have never been noticed by any court of any other state.

*Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 347-48 (D. Del. 2009)(internal quotations and citations omitted).

Plaintiff wisely does not argue the alter ego theory. As noted in *ICT Pharmaceuticals, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 147 F.Supp.2d 268, 274 (D.Del. 2001), piercing the corporate veil is an "extraordinary remedy."

Plaintiff does argue the agency theory. While Plaintiff has shown that ASUSTeK and ACI are related corporations with overlapping directors, along with other facts that reflect the parent-subsidiary relationship, these facts do not make ACI the "agent" of ASUSTeK for purposes of jurisdictional analysis. There is no evidence that ASUSTeK runs the day-to-day activities of ACI. Assuredly, they both have the same goals, which might loosely be termed, sales of ASUS-brand products, but showing that is a far cry from showing that the parent authorized particular sales transactions or any other particular conduct of business in the United States relevant to the sales or use of ASUS-brand products in Delaware.

Thus, for ASUSTeK, I do not need to consider the due process analysis.

The net result is that I find that Plaintiff has not established that there is personal jurisdiction as to defendant ASUSTeK generally, and as to ACI in relation to counts I ('109 patent) and X ('531 patent).

I now will consider the motion to transfer. Subsequent to the filing of this lawsuit, the Defendants sued the Plaintiff in the Northern District of California for a declaratory judgment on the patents then at issue in this lawsuit. The District Court stayed the California case pursuant to the first-filed rule. The District Court stated that if I denied the Defendants' transfer motion, the

Court would transfer its case to Delaware. (No. 4:11-cv-06636, D.I. 54, at 10.).[6] Thus, I must decide whether to transfer this case to the Northern District of California.[7]

The statutory authority for transferring the case is § 1404(a) of Title 28, which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[8] The burden of establishing the need for transfer is the movant's, *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), which in this case is ACI. The Third Circuit has set forth the framework for analysis:

> "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."
>
> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

---

[6] It occurs to me that the District Court's stated intent may not be as easily accomplished as I might have thought. If there is no jurisdiction over ASUSTeK in Delaware, I am not sure that the case against ASUSTeK can be transferred to Delaware. In any event, that is not my decision to make.

[7] I previously denied transfer to the Northern District of California in a companion case. *See Round Rock Research LLC v. Dell, Inc.*, 904 F.Supp.2d 374 (D.Del. 2012). I previously granted transfer to the Northern District of California in a separate case against ASUSTeK and ACI. *See IpVenture, Inc. v. Acer, Inc.*, 879 F.Supp.2d 426 (D.Del. 2012). The jurisdictional issues were differently presented in that case. *See id.* at 434 & n.6. Of course, each transfer decision has to be made on the individual facts pertaining to that decision, and neither of these decisions influences this decision.

[8] The recent amendment to § 1404 does not apply to this case, which was filed before the effective date of the amendment.

   The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

   The public interests have included: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted and numbering added).

Round Rock Research LLP is a Delaware limited liability company with its principal place of business in Mt. Kisco, New York. (D.I. 15, ¶ 1). The Defendants are Taiwanese and California corporations with principal places of business in those locations.

There is no dispute that this case could have been brought against ACI in the Northern District of California, as among other things, its principal place of business in Fremont is in the Northern District of California. I have no reason to believe that there is any more jurisdiction over ASUSTeK in the Northern District of California than there is in Delaware. For that reason, I cannot transfer the case against ASUSTeK to the Northern District of California. There are two other considerations in relation to ASUSTeK. One is that ASUSTeK states that it will submit to jurisdiction in Northern California. (D.I. 18, p.13). Under the version of §1404 in effect for this case, I do not think that concession matters. The other consideration is that since ASUSTeK has sought a declaratory judgment on the mirror image of these claims in the Northern District of California, it seems likely that counterclaims could be filed that would result

in ASUSTeK and Plaintiff having their day in court even if I dismiss ASUSTeK and transfer ACI. In any event, the analysis that follows is centered on considerations related to ACI, over whom the District of Delaware and the Northern District of California both have jurisdiction.

In my view, interest (1) supports Plaintiff's position that the case should not be transferred. Interest (2), and to a significantly lesser extent (5) and (6), support the defendant's request to transfer the case. The other interests do not add much to the balancing. The twelve interests are not exclusive, and in this case there are other considerations that I take into account.

Plaintiff has chosen Delaware as a forum. That choice weighs strongly in Plaintiff's favor, although not as strongly as it would if Plaintiff had its principal place of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'").

Defendant's preference is the Northern District of California. It is the Defendant's home turf. Defendant's choice has a legitimate basis, and therefore this factor weighs in favor of transfer.

The Defendant has argued, not very strenuously, in its briefing that the claim arose "if anywhere" in the Northern District of California. (D.I. 18 p.14). No one argues that the claim arose in Delaware. ASUS products are sold throughout the United States, and I would view the claim of infringement as being one that arises wherever the computers are sold. *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Thus, this factor has no weight in the

balancing.

Plaintiff is a small corporation with three employees in New York and New Jersey, but it has patent lawyers perfectly capable of litigating anywhere, and has sued an array of prominent defendants with sprawling allegations in this and related cases. The defendant is a substantial corporation with high-powered lawyers and can litigate anywhere. Other than size, there is nothing in the record relating to "physical and financial condition." I do not think this factor significantly favors either side, and therefore I will treat it as neutral.

At this juncture, it is hard to tell who the witnesses might be. Much of the dispute on this motion concerns third party witnesses. The ten asserted patents appear to have twelve different inventors. A substantial majority of the twelve inventors appear to be in Idaho and other places outside the subpoena power of both this Court and the Northern District of California. (D.I. 18, p.15). None are in Delaware; maybe one is in Northern California. (*Id.*). Thus, as far as the inventors go, the availability of witnesses for trial is not a very significant factor favoring transfer, as the vast majority of them do not appear to be subject to the subpoena power of either court. If the inventors as a group are considered, travel from Idaho to California is easier than travel from Idaho to Delaware, but not substantially so. I would say that at this point there is nothing more than a possibility that third-party witnesses other than the inventors would have material trial evidence. Thus, it appears to me that the trial in this case will likely boil down to employees of the two parties and various retained experts. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Such witnesses will appear wherever the trial is held. Thus, only because of the location of the inventors, this factor at most marginally favors transfer.

Similarly, the only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. The records of the defendant, which are likely the most important records for this litigation, *see id.*, are likely in California. They are not in Delaware. In any event, there are no records identified as only being available in one of the two locations.[9] Thus, this factor too adds very little to the balancing. To the extent it has any marginal impact, it favors transfer.

Enforceability of the judgment is not an issue.

Practical considerations that could make the trial easy, expeditious, or inexpensive are evenly balanced. A trial in Delaware is likely to be less easy and more expensive for ACI than a trial in the Northern District of California, because of travel considerations and expenses for witnesses. A trial in the Northern District of California is likely to be more costly for Plaintiff (which is represented by New York lawyers) than a trial in Delaware. On balance, the overall cost and convenience of a trial is likely to be about the same in either venue. ACI has not cited anything that persuades me that expedition will vary depending upon the location of the trial. In particular, I acknowledge a "recent scholarly study" (D.I. 22, p.20) suggesting that the average time to trial in Delaware is two years, compared to nearly three years in the Northern District, but this case, filed October 4, 2011, is rapidly approaching two years and has made no progress towards resolution. The two remaining companion cases are scheduled for trial in June 2014. Thus, this factor is speculative and therefore neutral.

---

[9] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

The relative administrative difficulty due to court congestion, to the extent that is different than the time to trial concern addressed above, is not argued, and is therefore neutral.

The "local controversy" consideration is also inapplicable here. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 207 (D.Del. 1998).

The public policy consideration is not argued and is therefore neutral.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

Other than Plaintiff's Delaware incorporation and its choice to sue in Delaware (which, as noted, makes the litigation more economical and convenient for the Plaintiff), there is another factor that ought to be considered. The Plaintiff contemporaneously sued three other computer manufacturers (Lenovo, Acer, Dell) in Delaware cases (two of which are pending, although Dell's is now resolved).[10] I had no particular knowledge of the patents or the technology at issue here at the time when the transfer motion was filed, but I have gained some through a *Markman* hearing in the Lenovo and Acer cases. Subsequent events while the motion to transfer has been pending should not be taken into account, *see In re EMC*, 501 F. App'x 973, 976 (Fed. Cir. 2013), and so I will not take my after-acquired knowledge into account. Nevertheless, it was predictable (and I did so predict in my Dell transfer decision, *see* 904 F.Supp.2d at 378-79) that I would likely be gaining such knowledge through the related cases. I believe that is a legitimate concern to factor into the analysis. *See In re Google*, 2011 WL 772875, *2 (Fed. Cir. March 4, 2011). Thus, the "co-pending litigation" marginally appears to favor not transferring the case.

---

[10] As noted, there is litigation between ASUSTeK and ACI and Round Rock in the Northern District of California in No. 11-6636-CW, with essentially the same issues as in the case in Delaware. There is additional litigation in that district between ASUSTeK and ACI and Round Rock in No. 12-2099-JST, which involves different patents. Both the California litigations were filed after the Delaware litigation.

Under Third Circuit law, considerable deference is given to the plaintiff's choice of forum. In considering all the transfer factors identified in *Jumara*, as well as the pending litigation against the codefendants, I do not think ACI has shown that the balance of convenience tips strongly enough in its favor so that transfer should be ordered. I will therefore deny its motion to transfer.

I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011).[11] The one difference of significance between this case and *Link_A_Media* is that Plaintiff does not have the connections to California that the plaintiff in *Link_A_Media* did. Essentially, the only reason the parties are here is that the Plaintiff is a Delaware corporation. It appears that it conducts licensing business in the Northern District of California., but clearly California is not its home. California is ACI's home. Given the significance attributed to Plaintiff's choice of forum under Third Circuit law, I do not believe the factors favoring transfer sufficiently outweigh the factors favoring retention in the District of Delaware.

An appropriate order will be entered.

---

[11] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media,* 662 F.3d at 1223. The law of the two Circuits in regard to how to conduct a transfer analysis is different in a number of regards. Of greatest relevance, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance."